UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL CAMYN,<br><br>          Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>          Defendant. | Case No.: C07-1902 CRD<br><br>ORDER RE: SOCIAL SECURITY<br>DISABILITY APPEAL |

Plaintiff Michael Camyn appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") who denied his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA" or the "Act"), 42 U.S.C sections 401-33, and Supplemental Security Income ("SSI") disability benefits under Title XVI of the SSA, 42 U.S.C. sections 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a twenty-eight-year-old male, nineteen years old at the alleged disability onset date. He has a limited high school special education and has no substantial work experience. Plaintiff received SSI (Child) payments from March 1992 through August 1997 when benefits ceased due to a disability redetermination. In September 2000, Plaintiff reapplied for SSI and DIB as an adult, alleging disability since August 1999 due to psychological disabilities. His claim was denied initially and upon reconsideration, and he timely requested an ALJ hearing.

ORDER - 1

A *de novo* hearing before ALJ Gaughen was held in November 2002, resulting in an unfavorable decision on February 12, 2003. Plaintiff appealed to the Appeals Council, which remanded the case to the ALJ with instructions. A second hearing was held before ALJ Gaughen on December 5, 2005. The ALJ again heard testimony from Plaintiff, who was represented by counsel, David Lybber, Esq. Administrative Record ("AR") at 658-95. The ALJ rendered an unfavorable decision on February 13, 2006, again finding Plaintiff not disabled. Plaintiff requested review by the Appeals Council and review was denied, rendering the ALJ's second decision the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 422.210 (2006). On December 5, 2007, Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. sections 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. section 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 402 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

///

///

## IV. THE DISABILITY EVALUATION

As the claimant, Mr. Camyn bears the burden of proving that he is disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id*. If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] In the present case, the ALJ found that although Plaintiff had worked at several short-term jobs he had not engaged in substantial gainful activity since the alleged onset of the disability. AR at 38, Finding 1. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). In this case, the ALJ found Plaintiff has the severe impairments of borderline intellectual functioning; dysthymia with chronic mood disturbances; personality disorders; and substance addiction disorder. *Id.*,

---

[1] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 404.1572.

ORDER - 3

Finding 2. If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.* In this case the ALJ found that Plaintiff's impairments did not meet or equal the requirements of any listed impairment when considering the impairments without drug and/or alcohol abuse. AR at 38, Finding 3.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The ALJ in this case found Plaintiff can perform work at all levels of exertion. AR at 38, Finding 5.

The ALJ next found that Plaintiff did not have any qualifying past relevant work. *Id.*, Finding 6. If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, the burden shifts to the Commissioner at step five to show the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, the claimant is found disabled and benefits may be awarded. In this case, the ALJ found that Plaintiff could perform at all exertional levels including store laborer, laundry worker, and industrial cleaner. AR at 38. The ALJ therefore concluded Plaintiff was not disabled as defined in the SSA. *Id.*

## V. ISSUES ON APPEAL

Plaintiff presents the following principal issues on appeal:

1. Did the ALJ fail to comply with the Appeals Council remand order?
2. Did the ALJ err in assessing psychological opinion evidence?

3. Did the ALJ err in finding Plaintiff does not meet or equal the listing for mental retardation?

4. Did the ALJ err in assessing Plaintiff's residual functional capacity?

5. Did the ALJ err in the hypothetical question to the vocational expert?

6. Did the ALJ err in assessing Plaintiff's credibility?

7. Did the ALJ err in failing to address lay witness statements?

Dkt. No. 15 at 4-8.

## VI. DISCUSSION

*A. The ALJ did not fail to comply with the Appeals Council remand order.*

Plaintiff argues that the ALJ failed to comply with the Appeals Council order. The Appeals Council remanded the case to the ALJ for the following reasons:

> The record regarding the severity of the claimant's documented limited intellectual functioning is unclear. The record reflects valid Verbal, Performance, or Full Scale IQ scores of 70 or less on four different occasions and one test suggesting scores in the low 80's (Exhibit 1E and 2F). Further assessment and clarification is required. As the claimant has also been diagnosed with a major depressive disorder (Exhibits 8F/16 and 10F/35) and an intermittent explosive disorder (Exhibit 3F/6) and it was found that the claimant's "severe" impairments included asthma, a personality disorder and a substance abuse disorder, further evaluation of the claimant's combined impairments is appropriate. An assessment, with appropriate articulated rationale, addressing whether the claimant meets or equals Medical Listing 12.05C in Appendix 1, Subpart P, Regulations No. 4, must be provided.

AR at 507.

Additionally, the Appeals Council noted it had received "new and material" evidence[2] after the first hearing that required assessment by the ALJ on remand. *Id.* The Appeals Council gave the ALJ the following remand instructions:

---

[2] The Appeals Council explained the relevance of the new evidence:
The Appeals Council has received a medical source statement from Dr. Benjamin Marte, dated February 18, 2003. Dr. Marte expressed an opinion that claimant cannot sustain any form of employment based on the combined effect of his multiple mental impairments. He assesses the claimant with moderate to marked limitations in numerous areas of non-exertional functioning. This new and material evidence, from a treating source, must be assessed in the context of the record as a whole when determining the claimant's work-related limitations.
AR at 507.

ORDER - 5

- Give further consideration to the treating and examining source opinion…and nonexamining source opinion…, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating and examining sources provide further clarification of the opinions and medical source statements about what the claimant can still do despite the impairments.
- Obtain evidence from a medical expert to clarify the nature and severity of the claimant's mental impairments.

AR at 507-08.

SSA regulations provide that "the administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 416.1477(b). Defendant argues that the ALJ complied with the Appeals Council order because the ALJ sent Plaintiff for a consultative psychological examination, had a medical expert testify at the hearing, and gave further consideration to Dr. Marte's opinion as directed by the Appeals Council. Dkt. 22 at 8. Plaintiff asserts the ALJ did not comply with the order by failing to: 1) complete further psychiatric testing and assessment; 2) correspond with Dr. Epp regarding whether he felt Plaintiff met or equaled listing 12.05C; and 3) contact Dr. Marte regarding his February 18, 2003 statement. Dkt. 15 at 4. The Court disagrees with each of the assertions. First, the ALJ did order further psychiatric evaluation, which, as Plaintiff notes, was carried out by Dr. Epp on February 7, 2005, and is discussed further below. AR at 521-33. Second, contrary to Plaintiff's assertion, the ALJ was not "required" to correspond with Dr. Epp or any other source about listing 12.05C specifically. The Appeals Council provided that "as appropriate" the ALJ "may" request further clarification from treating or examining sources, but did not require it. AR at 508. The ALJ obtained Dr. Epp's assessment and had a medical expert, Dr. Mabee, testify at the hearing regarding the nature and severity of the claimant's mental impairments, as required. Finally, nothing in the Appeals Council order *required* the ALJ to contact Dr. Marte regarding his February 2003 statement. Accordingly, the Court finds the ALJ's procedure on remand is not in violation of the Appeals Counsel procedural instructions and therefore finds no error in this regard.

///

*B.  The ALJ did not err in addressing medical evidence.*

Plaintiff asserts that the ALJ erred because he "failed to address the opinions of state agency nonexamining medical consultants." Dkt. 15 at 6, 20. Specifically, Plaintiff argues the ALJ did not consider the consultants' opinions regarding several moderate and marked restrictions in areas of functioning. *Id.* at 20. To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir.1995); *Magallanes*, 881 F.2d at 751-55. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Id.* The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof and making findings. *Magallanes*, 881 F.2d at 751 (internal citations omitted). The rejection of an opinion of a treating physician based in part on the testimony of a nontreating, nonexamining medical advisor may be upheld. *Morgan v. Commissioner*, 169 F.3d 595, 602 (9th Cir. 1999), citing *Magallanes*, 881 F.2d at 751-55; *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).

In this case, the ALJ discussed in detail each of the state agency physicians' opinions, including the three reports Plaintiff points out: Dr. Harris on March 23, 1999, Dr. McRae on February 22, 2000, and Dr. Brown on November 10, 2000. The ALJ discusses the examiners' respective opinions regarding Plaintiff's limitations (AR at 24A-25), and noted that they tend to support the ALJ's conclusions (AR at 35). However, the ALJ also noted, "additional evidence was received subsequent to their opinions, including the testimony at the hearing, making a new determination necessary in this case." *Id.* Two of the consultants found "marked" limitations in several areas. Likewise, the ALJ concluded that Plaintiff has identifiable "marked" limitations when the effects of Plaintiff's substance abuse/addition are considered (AR at 32), however concluded the limitations were not marked without considering the effects of drug and/or alcohol abuse (*Id.* at 33), pursuant to Public Law 104-121. Thus, the ALJ gave specific and legitimate reasons for ultimately finding the limitations not marked.

Plaintiff also asserts the ALJ erred in weighing Dr. Marte's opinions because Dr. Marte found Plaintiff to have "marked" restrictions in functioning. Dr. Marte, a treating physician, stated in a declaration on February 18, 2003, shortly after the first ALJ hearing, that he believes Plaintiff is unable to sustain any form of employment. AR at 520 H-I. The ALJ analyzes Dr. Marte's declaration as follows:

> Dr. Epp and Dr. Marte's reports appear to contain inconsistencies, and the records apparently give great credence to self-reports of problems by the claimant who is determined to be a noncredible historian. Dr. Marte's declaration is also not well-supported by numerous of his own treatment notes nor the testimony of the medical expert. It also fails to factor out drug and alcohol abuse in his impairment analysis. Therefore, their opinions are accordingly rendered less persuasive.

AR 26-27.

Thus, the ALJ gave specific and legitimate reasons for giving less than full weight to Dr. Marte's opinion. The ALJ also noted that Dr. Marte's conclusions differ from the medical expert's opinion at the hearing. The ALJ further explained that he found Plaintiff to have marked limitations when the effects of Plaintiff's substance abuse/addition are considered, just as Dr. Marte did, but not when drugs and alcohol are factored out. AR at 32. Therefore, the Court finds the ALJ's assessment of the medical opinions is supported by substantial evidence in the record.

*C.    The ALJ did not err in concluding Plaintiff does not meet any listing.*

Plaintiff asserts that he equals the listing for mental retardation, listing 12.05(C)[3]. Plaintiff argues that because he has a borderline IQ and additionally has depression, paranoid disorder, dysthemia, and explosive anger, that he should equal the listing and be found conclusively disabled. An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. 20 C.F.R. §§ 404.1520(d), 416.920(d). A boilerplate finding is insufficient to support a conclusion that an impairment does not do so. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001), *citing Marcia v. Sullivan*, 900 F.2d

---
[3] Listing 12.05(C) provides a claimant meets the listing with a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05(C).

ORDER - 8

172, 176 (9th Cir.1990) (holding ALJ erred by failing to consider evidence of equivalence to a listing).

First, the ALJ concluded Plaintiff's marked mental impairments were sufficiently severe to meet listing criteria (AR at 32), but that absent drug and/or alcohol considerations, his impairments are not severe enough to meet or medically equal any listed impairment (AR at 33). The ALJ concluded Plaintiff's drug and/or alcohol use and/or dependence is material to the disability assessment. Plaintiff does not point to any evidence, nor does the record reflect any, that supports finding him disabled without the substance abuse factor. The ALJ also noted that "no treating or examining physician has mentioned findings that meet or are equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical signs or findings that are the same or equivalent to those of any listed impairment." AR at 33. Accordingly, this Court finds the ALJ's determination that Plaintiff does not meet any listing based on substantial evidence in the record.

   *D.*  *The ALJ did not err in assessing Plaintiff's residual functional capacity.*

Plaintiff argues that his RFC determination is based on improper assessments of his psychological impairments. Plaintiff argues the ALJ improperly credited the opinion of the medical expert, Dr. Mabee, over the opinions of Drs. Epp and Marte. This Court does not agree. As discussed above, the Court finds the ALJ did not err in evaluating the psychological evidence that Plaintiff disputes, therefore the residual functional capacity assessment based on those evaluations is not in error.

   *E.*  *The ALJ did not err in the hypothetical question to the vocational expert.*

Plaintiff disputes the ALJ's use and definition of the term "moderate" when describing his limitations to the VE. Dkt. 15 at 17-18. At the hearing, the ALJ stated: "[n]ow moderate has this, has this definition, he is still able to function satisfactorily in the area. There's moderate limitation, but he is still able to function satisfactorily, and slight has this definition. There is some mild limitation but he can generally function well." AR at 686. Plaintiff asserts that this statement by the ALJ "changed the moderate restrictions into mild or slight restrictions" (Dkt. 15 at 18), and that stated in conjunction with the ALJ's subsequent comment: "in other areas of

ORDER - 9

basic work functioning, to remember locations, work around others without being distracted, always to maintain the appropriate pace of work, etc., and to do goal setting, there is slight only limitations" (AR at 686), the comments confused the VE because "[it] provides that there are some restrictions that are slight, others that are moderate but then to turn around and tell the VE that the moderate are the same as slight" (Dkt. 15 at 18). The Court disagrees. From the transcript, it is clear that ALJ described "moderate" and then described "slight", explaining that Plaintiff has some moderate limitations and some which are only slight. AR at 686. The ALJ's descriptions were straightforward and there is no indication the VE might have been confused.

Plaintiff next argues that the alleged underlying error in his RFC assessment resulted in a flawed hypothetical question to the VE. The ALJ found that Plaintiff could perform the full exertional range of work within the following parameters:

> [t]he claimant is moderately limited in understanding, remembering and carrying out detailed instructions; those having three or more steps. He also has moderate limitations in the ability to maintain activities within a schedule, maintain regular attendance and be on time, sustain an ordinary routine and complete an ordinary work day or work week. With regard to his social interaction, he would have moderate limitations in his ability to always accept instructions, respond appropriately to being criticized and to respond to significant changes in the work setting. In other areas of basic work functioning to remember locations, work around others without being distracted, always to maintain the appropriate pace of work are slightly limited. Regarding the claimant's social interaction skills, he is unable to do work requiring higher level social interaction, specifically, that which would require a great deal of contact or banter with customers or co-workers or collaborative work with them especially with information exchange during a work day. Also, the claimant is unable to do work requiring constant or close supervision from the boss or supervisor because of the nature of the work. He would need to take longer with and also have significant problems in handling detailed work throughout a workday or work week and would need extra time to learn tasks requiring mastery of detailed instructions. However, if work challenges involve basically simple and repetitive work tasks and a set routine and only perfunctory or routine interchanges with the boss, coworkers and/or the public, he can perform basic activities throughout the work week.

AR at 36.

Based on the vocational expert testimony in response to the question involving a person with these limitations (AR at 687), the ALJ concluded Plaintiff is capable of working as a store laborer, laundry worker, and an industrial cleaner (AR at 37). As addressed above, this Court

finds the RFC determination is based on substantial evidence and not in error; thus, the hypothetical questions the ALJ asked of the vocational expert based on such RFC were also not in error. The ALJ appropriately used a vocational expert to find examples of jobs Plaintiff could perform based on the RFC and limitations he assigned. Where the ALJ's findings are based upon substantial evidence in the record, the Commissioner's decision to deny benefits will not be reversed. *Bayliss*, 427 F.3d at 1214.

   *F.*  *The ALJ did not err in assessing Plaintiff's credibility.*

  Plaintiff claims that the ALJ failed to make a proper credibility finding. Dkt. 15 at 7. Plaintiff argues that there is no clear evidence of malingering or a diagnosis of malingering by any of his doctors. Dkt. 23 at 7. Absent evidence of malingering, the ALJ can only reject Plaintiff's testimony regarding the severity of his symptoms by giving "specific, clear and convincing reasons" for the rejection. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036; *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *Thomas*, 278 F.3d at 958-59. In finding a claimant's testimony unreliable, an ALJ must render a credibility determination with sufficiently specific findings, supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d 821, 834 (9th Cir. 1995). "We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). An ALJ may not discredit a claimant's pain testimony solely on the ground that it is not supported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989).

  In this case, the ALJ concluded that Plaintiff's testimony was not fully credible because there was discrepant evidence in the record of his having worked and that several clinicians and

doctors found him not credible with respect to his drug and alcohol use and his effort on psychological tests. Inexplicably, Plaintiff argues that Dr. Epp made no "formal diagnosis" of malingering, however, as the ALJ noted, after administering a series of psychological tests designed to detect malingering Dr. Epp found: "Michael's behavior in testing was very unusual…This provides strong evidence for malingering or facticious behavior. His behavior on this test is simply not credible. Consequently, there is considerable doubt about the validity and reliability of all the testing completed in the course of this evaluation." AR at 530. Thus, it appears Dr. Epp suspected Plaintiff was malingering.

The ALJ cited the following examples of evidence that undermines Plaintiff's credibility: that "his social and adaptive functioning limitations are assessed as 'moderate' in nature; i.e., he has some noted functioning problems but he generally can function well"; early GAF scores were higher, indicating good functioning with somewhat mild dysfunction; reports in 2001-2002 assessed him as "doing well"; mental health providers felt he was not honest about heavy illegal drug use in April 2002; and that Dr. Epp noted that he looked like he was on drugs. AR at 35. The ALJ found Dr. Mabee's assessment persuasive, in which he found that Plaintiff's symptoms are not as severe as he claims. AR at 34. The Court also notes that the Appeals Counsel did not specify any problems with Plaintiff's credibility analysis in its remand order. The Court finds the ALJ determined, based on substantial evidence in the record, that Plaintiff's symptoms were less severe than he alleged. The ALJ's credibility assessment is supported by clear and convincing reasons, based on substantial evidence, and is free of legal error. *See Green v. Heckler*, 803 F.2d 528, 532 (9th Cir. 1986) (stating that ALJ's credibility determinations are entitled to great deference); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (stating that ALJ's role is to judge credibility of claimant).

*G.     The ALJ failed to discuss lay witness statements.*

Lastly, Plaintiff contends the ALJ erred by omitting from his written decision any discussion of lay witness statements given by his mother and aunt. Plaintiff is correct in that the ALJ's written decision does not note the lay witness' statements. The statements are generally supportive of Plaintiff's testimony regarding his limitations and activities of daily life, however,

as discussed above, the ALJ found such testimony not entirely credible. Regardless, lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (internal citations omitted). It is unfortunate that the ALJ proceeded through a detailed written decision but failed to mention the two statements. However, the Court finds that while the ALJ did not assess what weight, if any, he assigned to these lay-witnesses, the ALJ's failure to do so in this instance constitutes harmless error. *Stout v. Commissioner Soc. Sec. Admin.*, 454 F.3d 1050, 1054-56 (9th Cir. 2006). This is because the statements are consistent with the ALJ's finding that Plaintiff does have marked limitations in several categories. However, the ALJ found that when drugs and/or alcohol are factored out, Plaintiff's marked limitations downgrade to moderate. The lay witness statements do not factor in any effect drug or alcohol abuse may have on Plaintiff's limitations; therefore, even if the ALJ had given full credit to both statements, the ALJ would nonetheless have reached the same conclusion when accounting for drug and alcohol abuse, which he found material to Plaintiff's disability determination. Despite the failure to address lay witness testimony, the Court finds that the RFC determination is supported by substantial evidence, therefore, it is free of harmful legal error.

## VII. CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED and the case DISMISSED.

DATED this 11th day of August, 2008.

Carolyn R. Dimmick
United States District Judge

ORDER - 13